## Case No. 274.

### The A. M. BLISS.

[2 Lowell, 103.][1]

District Court, D. Massachusetts. March, 1872.

ADMIRALTY — JURISDICTION — CHARTER-PARTY — MARITIME LIENS—PLEDGE OF FREIGHT AS SECURITY.

1. The district court has full jurisdiction of all contracts of affreightment and of claims for indirect as well as direct damages for the violation of them.

[Cited in Paterson v. Dakin, 31 Fed. 684.]

[See Insurance Co. v. Dunham, 11 Wall. (78 U. S.) 1; The Alberto, 24 Fed. 379; The Volunteer, Case No. 16,991; The Pauline, Id. 10,848; The Dick Keys, Id. 3,898; Lowry v. Canal Boat, Id. 8,580.]

2. There is no lien upon a vessel for loans made on a pledge of the freight as security.

3. Where agents of a vessel, who were part owners, chartered the vessel to a creditor of their own, to enable him to repay himself out of the earnings,—*Held*, the charter-party was void as against the vessel and the other owners.

In admiralty. Affreightment.—Libel by A. S. Lewis and others, composing the mercantile firm of A. S. & W. G. Lewis & Co., against the schooner A. M. Bliss, alleging that they hired the vessel of Patton, Ginn, & Folger, of Boston, agents and owners, for six voyages to Hayti or other parts of the West Indies, or the Salt Islands, at $1,200 for each voyage, and that the vessel had performed only two of the voyages, and that her master and said agents refused to send her on the third voyage; that the libellants had advanced, on account of the freight, $2,200 more than had been already earned; which sum, with other damages, they sought to recover. An amendment was filed, by consent, averring that the libellants had settled the two voyages, and had, besides, advanced $3,000, by their acceptance drawn on account of the charter, which they were liable to pay at any time, and that other charges to the amount of $350 had accrued on the same account. The master appeared and claimed the vessel, and in his answer denied the authority of the supposed agents to make the charter, and set up that it was a fraud on the other owners, and that the libellants participated in the fraud; denied that he had absolutely refused to make the third voyage, but said that he offered to make it if the libellants would settle for the former voyages, and would pay the future freight to the owners. There was much conflict of evidence con-

[1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

1FED.CAS.—38

cerning the master's knowledge of the charter-party, the authority of the agents, and the good faith of the transaction; and there was some discrepancy and contradiction concerning the amounts, dates, &c., of advances said to have been made. The dealings were between Patton of the one part, and W. G. Lewis of the other; and there was some testimony from both of them that a considerable part of the charter-money was to be applied to liquidate old debts of Patton, or of his former firm of Patton & Ginn, to the libellants themselves, or to one of them. Patton & Ginn were now bankrupts. The charter-party contained several clauses that were commented on as unusual, and as showing fraud; among others, that a commission of five per cent should be payable to the charterers, and two and a half per cent to the agents "on the signing lost or not lost on any voyage," and that the agents agreed to sign charter-parties at the beginning of each voyage for such terms as Lewis & Co. might direct, without prejudice to any clause of the original charter-party; and that the charterers might cancel the charter-party at the end of any voyage. On the other hand, there was evidence that the right to cancel was not unusual in the Haytien trade, and was reasonable, owing to the peculiar vicissitudes of that business. The right to insert a different rate of freight in the voyage charters was said to be intended to enable the charterers to charge their correspondents abroad more than they really paid for the schooner, if the market rate of freights should advance.

J. W. Hudson, for libellants.

J. C. Dodge, for claimant.

LOWELL, District Judge. The arguments of counsel have turned so much upon the important matters of fact involved in the controversy, that they have almost overlooked the point raised by the answer, whether, upon the libellants' own case, they have a lien on the ship. The district court has full jurisdiction of contracts of affreightment, whether evidenced by charter-party or bill of lading; and though the damages may, in any case, be somewhat indirect, as, for instance, if they arise out of a jettison which requires contribution, or out of a fraudulent payment of salvage by the master, yet the mode in which the claim for compensation arises will not oust the jurisdiction: Dupont de Nemours v. Vance, 19 How. [60 U. S.] 162; Church v. Shelton, [Case No. 2,714;] The Panama, [Id. No. 10,703.] If, then, the fact were as is alleged in the libel, that an advance of the freight had been made by the charterers in accordance with the terms of the contract, the advance would, in the absence of an express agreement to the contrary, be recoverable of the owners, if the ship should, for any reason, fail to perform the voyage;

and this right might be enforced against the ship: The Panama, ubi supra; The Pacific, [Case No. 10,643.] But I understand that the advances, so called, in this case, were not advances of freight, but loans on a pledge of the freight, which is a very different thing. In the one case, there could be no recovery, unless the voyage failed; and, in the other, the borrowers would be bound to repay the money in any event, and the lenders would have merely a right to security on the freight. Such a loan does not purport to pledge the ship, but only the freight; and there is no lien on the ship for its repayment, because the failure to pay is no breach, express or implied, of the charter-party, but only of a distinct contract of loan, in which the promise of the borrower is the principal obligation. In this respect the charterers are on no different footing from any other person who should lend money to the ship-owner on a pledge of freight. The ship is bound to the due performance of the contract of hiring, including, perhaps, the repayment of freight advanced on the charter; but it is not bound to the performance of a collateral agreement to repay money lent on the faith that all the covenants of the charter will be kept. The distinction may seem a nice one, but it appears to me to be plain and indisputable.

My duty, however, requires me to go further, and examine the legality of the contract itself; because I may have misunderstood the facts on which I decide that no privilege is held against the vessel, but more especially because some damages are testified to which do undoubtedly have such a privilege, if the charter be a binding contract. It is said, indeed, that the master never refused to perform his part of the charter, excepting upon terms, which he had a right to insist on, of a settlement of each voyage when it was ended; but his right to a settlement, or, at least, to any thing more than a mere statement of the account, depends on whether the charterers had already lawfully paid or lent to the authorized agents of the vessel much more than had been earned at the time of the dispute, which involves the whole merits of the case. I cannot understand the libellants' witnesses otherwise than that a great part of the very large sum which was to be lent or advanced was to go to pay the old debts of Patton & Ginn to the charterers, or one of them. Indeed, it is scarcely credible that so large an advance as is mentioned in the memorandum—more than twice what the libel alleges—could be made under any ordinary circumstances, especially on a charter which the lenders might wish to cancel at the end of some one of the voyages. That the amount was so large; that the agreement for it, which really preceded the charter, was not embodied in it; that some indefinite part of the money was appropriated to the old debts, and no definite

part was testified to as having been applied to any thing else,—all lead me to the conclusion that this was the true intent of the transaction. The evidence certainly tends somewhat strongly to throw a doubt on any advances having been made at all, excepting of one sum of $350, which, perhaps, had been earned before it was paid, and was not truly an advance. But this is consistent with the other theory, for it shows that the parties intended to settle every thing by an adjustment of accounts; which, if Patton & Ginn had been the only owners of the schooner, would have been a very proper arrangement, but actually involved an abuse of the agency, which the libellants must be held to have known, for they were bound to inquire into the ownership of the vessel before undertaking to pay themselves out of the earnings. I have no hesitation in saying that the charter-party was void as against the vessel and all the owners excepting Patton & Ginn. Libel dismissed with costs.